UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Stanley Mason,

                      Petitioner,                      Civil Action No. 2:12-CV-15655
                                                  Honorable Lawrence P. Zatkoff

v.

Catherine Bauman,

                      Respondent.

_____/

OPINION & ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS, DENYING
CERTIFICATE OF APPEALABILITY AND LEAVE TO APPEAL IN FORMA PAUPERIS,
AND DENYING PETITIONER'S MOTION TO WITHDRAW PETITION

        This matter is before the Court on Petitioner's request for habeas relief pursuant to 28 U.S.C.

§ 2254. Petitioner was convicted after a jury trial in the Wayne Circuit Court of first-degree

premeditated murder, MICH. COMP. LAWS § 750.316; felon in possession of a firearm, MICH. COMP.

LAWS § 750.224f; and possession of a firearm during the commission of a felony. MICH. COMP.

LAWS § 750.227b. As a result of these convictions Petitioner was sentenced to life imprisonment for

his murder conviction, 6-to-15 years for his felon in possession of a firearm conviction, and a 5-year

consecutive sentence for his felony firearm conviction. The petition raises five claims: (1) Petitioner

was denied the effective assistance of counsel because of the late production of 9-1-1 tapes by the

prosecutor; (2) the jury instruction regarding the felon in possession of a firearm charge denied

Petitioner a fair trial; (3) Petitioner's trial was rendered unfair by prosecutorial misconduct; (4) the

admission of gruesome photographs of the victim's body violated due process; and (5) there was

insufficient evidence presented at trial to support Petitioner's convictions. The Court will deny the

petition because Petitioner's claims lack merit. The Court will also deny Petitioner a certificate of

appealability, permission to appeal in forma pauperis, and his motion to withdraw the petition.

Background

This Court recites verbatim the relevant facts relied upon by the Michigan Court of Appeals,

which are presumed correct on habeas review pursuant to 28 U.S.C. § 2254(e)(1). *See Wagner v.*

*Smith,* 581 F.3d 410, 413 (6th Cir. 2009):

> On the night of April 10, 2009, Jerone Mason hosted a birthday party at the Kings & Queens Rental Hall ("K & Q"), located at 15845 Schaefer in Detroit. Before being allowed admittance into K & Q, the guests were subjected to a pat-down search. Guests started showing up around 9:00 p.m., and the party lasted until around 3:00 a.m. on April 11, 2009.
>
> During the party, a guest, Tammy Reed, got into a series of altercations with many people, including several other women and a man called "Pooh Bear." After these altercations, Tammy, being very upset called her friend, Artavia Epperson, to bring a pair of pants to K & Q. Tammy also called some other friends, Tia Tate and Tacara Woods, to come to K & Q. Artavia, Tia, and Tacara all arrived in separate vehicles. Deshawn Jenkins ("Shawn"), Tacara's boyfriend and fiancé, accompanied Tacara to K & Q. Artavia gave the pants to Tammy, and Tammy changed her clothes. When Tammy saw Shawn, she explained that "Pooh Bear" had punched her and she wanted to fight him.
>
> The group waited in the parking lot until Tammy pointed out Pooh Bear as he walked into the parking lot from the K & Q building. Pooh Bear and Tammy yelled at each other and approached fighting. At that point, Shawn approached and hit Pooh Bear, knocking him to the ground. While Shawn was fighting Pooh Bear, who was still on the ground, another man jumped in and started hitting Shawn. The other man was wearing a multi-colored, checkered jacket. Shawn turned around, grabbed this other man, and slammed him to the ground as well. While Shawn was fighting these two individuals, defendant came up behind Shawn and struck him in the back of the head with his fist. Shawn eventually turned around and faced defendant. Tia, who knew defendant, physically jumped between them and repeatedly told defendant that Shawn was "with us." Defendant kept saying in response to Tia, "But that's my cousin!" referring to the man in the multi-colored, checkered jacket. Shawn, while grabbing defendant's arms, said, "I'm not going to fight you; I'm going to leave, when I let you go, don't hit me." Shawn also stated that he was going to leave with his girlfriend and Tammy. Defendant responded that nobody had been able to make Tammy leave all night. Shawn proceeded to let defendant go, and they separated with no incident. With her back to defendant, Tia heard defendant say that he was going to get a gun. Defendant walked out of the parking lot, turned left, and

2

continued to walk north along Schafer.

By that point, Tacara had moved into the driver's seat of her vehicle. Shawn was upset and walked over to the driver's side and opened the door in order to talk with Tacara. Shawn was demanding that Tacara get out of the driver's seat so he could drive, but Tacara was resistant, saying that she did not want to move. During this conversation, Artavia, who was standing near the rear of the vehicle, saw defendant approach carrying a handgun. When defendant passed her she pulled on defendant's arms, pleading, "Please, no, he came with us." Defendant shrugged Artavia off and walked up to Shawn. Artavia testified that defendant placed the gun up to Shawn's head while Shawn was talking with Tacara. Artaia said that defendant was yelling, "F—k who? F—k what? F—k this. Watch this."

Artavia testified that Shawn then straightened up and turned to his right so that he was facing defendant. Defendant fired one shot striking Shawn in the left side of the neck. According to Artavia, defendant turned around and ran toward the street where a red minivan was waiting. Once near the minivan, defendant told the man with the multi-colored, checkered jacket, who was nearby, "Let's roll," and they both jumped in the minivan and quickly pulled away.

Shawn was pronounced brain dead and later died at 9:05 a.m. The medical examiner, Dr. John Somerset, testified that Shawn died from a single gunshot wound to the neck. On April 14, 2009, both Artavia and Tia identified defendant in photograph lineups at the police station. Defendant was later arrested, charged, and convicted by a jury.

*People v. Mason*, No. 295402, 2011 WL 1450657, at *1-2 (Mich. Ct. App. Apr. 14, 2011).

Following his conviction and sentence, Petitioner filed a claim of appeal in the Michigan Court of Appeals, raising the same claims he raises in the instant petition. The Michigan Court of Appeals  affirmed in an unpublished opinion. *Id*.

Petitioner subsequently filed an application for leave to appeal in the Michigan Supreme Court, raising the same claims. The Michigan Supreme Court denied the application because it was not persuaded that the questions presented should be reviewed by the Court. *People v. Mason*, 804 N.W.2d 333 (Mich. 2011) (table).

Standard of Review

Review of this case is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA").  Pursuant to the AEDPA, Petitioner is entitled to a writ of habeas corpus only if he can show that the state court's adjudication of his claims on the merits-

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000).  An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id*. at 409.  A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id*. at 410-11.

The Supreme Court has explained that "[a] federal court's collateral review of a state-court decision must be consistent with the respect due state courts in our federal system." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).  The "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, 130 S.Ct. 1855, 1862, 176 L. Ed. 2d 678 (2010)(quoting *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7 (1997); *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (per curiam)). "[A]

4

state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 131 S.Ct. 770, 786 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).  The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id*. (citing *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003)). Furthermore, pursuant to § 2254(d), "a habeas court must determine what arguments or theories supported or...could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court. *Id*. "[I]f this standard is difficult to meet, that is because it was meant to be." *Harrington*, 131 S. Ct. at 786.

Although 28 U.S.C. § 2254(d), as amended by the AEDPA, does not completely bar federal courts from relitigating claims that have previously been rejected in the state courts, it preserves the authority for a federal court to grant habeas relief only "in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with" the Supreme Court's precedents. *Id*.  Indeed, "Section 2254(d) reflects the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Id*. (citing *Jackson v. Virginia*, 443 U.S. 307, 332, n. 5 (1979))(Stevens, J., concurring in judgment). Therefore, in order to obtain habeas relief in federal court, a state prisoner is required to show that the state court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.*, at 786-787.

Discussion

A. Late Production of 9-1-1 Tapes

Petitioner first argues that he was denied the effective assistance of counsel because the prosecutor did not provide defense counsel with the tapes of the 9-1-1 calls until three days before trial, leaving defense counsel with inadequate time to prepare for trial.

The Sixth Amendment right to counsel and the right to effective assistance of counsel protect the fundamental right to a fair trial. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). To establish the ineffective assistance of counsel, a petitioner must show that: (1) counsel's errors were so serious that "counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment;" and (2) counsel's deficient performance prejudiced the defense. *Id*. at 687.  As the Supreme Court has recently explained, *Strickland* establishes a high burden that is difficult to meet, made more so when the deference required by § 2254(d)(1) is applied to review a state court's application of Strickland to claims adjudicated on the merits by the state courts. "When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard." *Harrington,* 131 S. Ct. at 788.

Here, the record shows that the 9-1-1 transcripts were not provided to defense counsel until three days prior to trial. The transcripts, however, were not a particularly important part of the prosecutor's case. Essentially, they only served to show that witnesses called 9-1-1 to report men with guns at the scene of shooting at around 2:00 a.m., a report of a fight in the parking lot coming in at around 2:45 a.m., and another report of shooting at the scene. None of the calls identified the shooter or otherwise implicated Petitioner. As a result, the Michigan Court of Appeals found that

Petitioner was unable to show how he was prejudiced by his counsel's late receipt of the transcripts.

This decision resulted in a reasonable application of the *Strickland* standard. Under Michigan law, to determine the appropriate remedy for a discovery violation in a criminal case, "the trial court must balance the interests of the courts, the public, and the parties in light of all the relevant circumstances, including the reasons for noncompliance." *People v. Banks*, 249 Mich. App. 247, 252 (2002). A complaining party must also show that the discovery violation caused him actual prejudice. *See People v. Davie*, 225 Mich. App. 592, 598 (1997). The "exclusion of otherwise admissible evidence is an extremely severe sanction that should be limited to egregious cases." *People v. Taylor*, 159 Mich. App. 468, 487 (1987). Moreover, "[a] remedy which would put the objecting party in a better position than he would have enjoyed had disclosure been timely made would seem of dubious value, particularly if it does violence to other legitimate interests in the case." *Id*.

In light of this, the Court finds that Petitioner has failed to show that the recordings of the 9-1-1 calls would have been suppressed had counsel objected to the prosecution's late disclosure. There was no new information in the transcripts that would have proved useful to the defense. Nor did the prosecutor make any use of them that required defense counsel to have advanced knowledge. Therefore, Petitioner is unable to show that the transcripts would have been suppressed had counsel objected.

Accordingly, the Court finds that the state court reasonably rejected Petitioner's ineffective assistance of counsel claim.

B. Felon in Possession of a Firearm Charge

Petitioner's second claim asserts that he was prejudiced when the jury was informed that he

was a convicted felon when the jury instruction regarding the felon in possession of a firearm charge was read .

This argument is frivolous. The parties stipulated that Petitioner had a prior felony conviction. The stipulation prevented, not caused, unfair prejudice because it avoided the admission of evidence regarding the nature of the prior felony. See *Reed v. Wolfenbarger*, 2013 WL 757629 at *15-17 ( E.D. Mich. Feb. 28, 2013) (J. Roberts). The trial court instructed the jury that Petitioner's prior conviction should only be considered for purposes of the firearm charge. Jurors are presumed to follow their instructions, and Petitioner has failed to demonstrate that they did not do so here. *Greer v. Miller*, 483 U.S. 756, 767 (1987).

Accordingly, the Court finds no basis for granting habeas relief on this claim.

C. Prosecutorial Misconduct

Petitioner next claims that the prosecutor committed misconduct by arguing facts not in evidence during closing argument and by referring to the high crime rate in the City of Detroit.

The United States Supreme Court has made clear that prosecutors must "refrain from improper methods calculated to produce a wrongful conviction." *Berger v. United States*, 295 U.S. 78, 88 (1935). To prevail on a claim of prosecutorial misconduct, a habeas petitioner must demonstrate that the prosecutor's conduct or remarks "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974); *see also Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (citing *Donnelly*); *Parker v. Matthews*, 132 S.Ct. 2148, 2153 (2012) (confirming that *Donnelly/Darden* is the proper standard).

With respect to Petitioner's first allegation, the prosecutor stated that Petitioner admitted that he was searched for weapons when he entered the party, and that fact explained why he kept his

8

firearm in his car. Prosecutors must refrain from asserting facts never admitted in evidence. *Washington v. Hofbauer*, 228 F.3d 689, 700 (6th Cir. 2000). However, "prosecutors can . . . assert reasonable inferences from the evidence." *Bates v. Bell*, 402 F.3d 635, 646 (6th Cir. 2005).

The evidence presented at trial showed that after the initial confrontation between Petitioner and the victim, Petitioner left the scene and then came back from the direction of the parking lot armed with a firearm. This allowed the prosecutor to draw the reasonable inference that Petitioner went to his car to retrieve the firearm because he did not have one in his possession when he was searched before the party. Contrary to Petitioner's argument, the argument did not suggest that Petitioner admitted to leaving the firearm in his car.

Petitioner also challenges the prosecutor's argument that Petitioner must have informed someone of his plan to shoot the victim because a van was waiting for him after the shooting, and his argument that Petitioner went to a family member's home to hide the gun on the same grounds. The Court finds that these arguments were also supported by the evidence. An eyewitness testified that immediately after the shooting Petitioner jumped into a van which fled the scene. The prosecutor's statement was therefore a fair inference from the evidence. Moreover, there was testimony that Petitioner and his girlfriend returned separately to a family member's home after the shooting. This allowed the prosecutor to reasonably infer that Petitioner had sufficient time following the shooting to dispose of the firearm. As such, neither of these arguments were improper.

Next, Petitioner asserts that the prosecutor unfairly injected societal problems into the case by referring to the high crime rate in Detroit during her examination of one of the police officers. "It is improper for a prosecutor to suggest that a jury has a civic duty to convict." *Thornburg v. Mullin*, 422 F.3d 1113, 1134 (10th Cir. 2005). Here, though, the prosecutor did nothing of the sort.

9

The record shows that during the prosecutor's case, the officer in charge testified that the homicide division does not become involved in a shooting case until the victim is pronounced dead. The officer affirmed that this was due to the "volume" of shootings. No further mention of this was made at trial. The question and answer did not suggest in any way that the jury should find Petitioner guilty as a matter of civic duty. Rather, it was a relatively innocuous question aimed at explaining why the officer did not become involved in the case sooner than he did.

Accordingly, the Court finds that Petitioner is not entitled to habeas relief on this claim.

D. Gruesome Photographs

Petitioner next asserts that he was prejudiced by the admission of a photograph of the victim's body. It is well established, however, that habeas corpus is not available to remedy a state court's error in the application of state evidentiary law. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("Today, we reemphasize that it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."). As the Sixth Circuit has noted, "[e]rrors by a state court in the admission of evidence are not cognizable in habeas proceedings unless they so perniciously affect the prosecution of a criminal case as to deny the defendant the fundamental right to a fair trial." *Kelly v. Withrow*, 25 F.3d 363, 370 (6th Cir. 1994).

Under Michigan law, "[i]f photographs are otherwise admissible for a proper purpose, they are not rendered inadmissible merely because they vividly portray the details of a gruesome or shocking accident or crime, even though they may tend to arouse the passion and prejudice of the jury." *People v. Hoffman*, 205 Mich. App. 1, 18 (1994). As a federal constitutional matter, the admission of relevant photographs of a crime victim, even if gruesome, does not deprive a criminal defendant of a fair trial. *Biros v. Bagley*, 422 F.3d 379, 391 (6th Cir. 2005).

10

Accordingly, the Court finds that Petitioner is not entitled to habeas relief on this claim.

E. Sufficiency of the Evidence

Petitioner's final claim asserts that insufficient evidence was presented at trial to sustain his convictions. Petitioner challenges Artavia's identification - because of her inaccurate description of his clothing - and the evidence presented to show that the killing was premeditated.

The Due Process Clause of the Fourteenth Amendment "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In Re Winship*, 397 U.S. 358, 364 (1970). Under the pre-AEDPA standard for habeas review of sufficiency of the evidence challenges, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original). Reviewing courts must view the evidence, draw inferences and resolve conflicting inferences from the record in favor of the prosecution. "[I]t is the responsibility of the jury-not the court-to decide what conclusions should be drawn from the evidence admitted at trial." *Cavazos v. Smith*, 132 S. Ct. 2, 4 (2011) (per curiam). The *Jackson* standard "leaves juries broad discretion in deciding what inferences to draw from the evidence presented at trial, requiring only that jurors 'draw reasonable inferences from basic facts to ultimate facts.'" *Coleman v. Johnson*, 132 S. Ct. 2060, 2064 (2012) (per curiam) (quoting *Jackson*, 443 U.S. at 319). Likewise, a reviewing court "do[es] not make credibility determinations in evaluating the sufficiency of the evidence." *United State v. Owusu*, 199 F.3d 329, 344 (6th Cir. 2000); *see also United States v. Bailey*, 444 U.S. 394, 424-25 (1980) ("It is for [jurors] and not for appellate courts to say that a particular witness spoke the truth or fabricated a cock-and-bull story.").

11

Under the amended version of § 2254(d)(1) a federal habeas court's review is "twice-deferential." *Parker v. Matthews*, 132 S. Ct. 2148, 2152 (2012) (per curiam).

First, the Court finds Petitioner's challenge to Artavia's credibility does not constitute an attack on the legal sufficiency of the evidence. The state appellate court correctly concluded that the credibility of witnesses is for the jury to decide, not a court reviewing the sufficiency of the evidence. Next, the Court finds that there was ample evidence presented at trial to support the finding that Petitioner acted with premeditation when he killed the victim. Under Michigan law, the element of deliberation and premeditation is satisfied by a showing that a defendant had sufficient time to reconsider or "take a second look" at his actions before he committed the murder. *People v. Abraham*, 234 Mich. App. 640, 656 (1999). The evidence viewed most favorably to the prosecutor here showed that after the initial confrontation Petitioner left the scene to retrieve his handgun. A witness testified that she heard Petitioner say so. Petitioner then walked over to where the victim was standing and shot him. Petitioner fled the scene in what appeared to be a waiting van. This evidence allowed the jury to infer that Petitioner decided to shoot the victim after the fight and told someone that he planned to do so and to pick him up and drive him away afterwards. The Michigan Court of Appeals' conclusion that sufficient evidence was presented to demonstrate that the murder was premeditated was a reasonable one.

Accordingly, the Court finds the claim does not merit habeas relief.

F. Motion to Withdraw Petition

Finally, the Court notes that approximately one-year after Respondent filed its answer in this case, Petitioner retained counsel, who has filed a Motion to Allow Petitioner to Withdraw Writ of Habeas Corpus [dkt. 14]. In the motion, Petitioner's counsel states that Petitioner insufficiently

briefed his issues, and counsel would like to "allow [Petitioner] to withdraw his filings to date and allow undersigned counsel to proceed on his behalf as though she represented him from his first contact with this Court." Petitioner's counsel recognizes that habeas claims must be exhausted in the state courts, and she therefore appears to request to file a new petition that raises the same claims that were raised in Petitioner's pro se pleadings.

While Federal Rule of Civil Procedure 15 provides that the Court may freely allow a party to amend, it may do so when justice so requires. Fed. R. Civ. P. 15(a)(2). The Court also notes that the constitutional right to counsel in criminal proceedings provided by the Sixth Amendment does not apply to an application for writ of habeas corpus, which is a civil proceeding. *Cobas v. Burgess*, 306 F.3d 441, 444 (6th Cir. 2002), cert. denied, 538 U.S. 984 (2003), reh. denied, 539 U.S. 970 (2003). As established above, the Court - after careful review of the record - concluded that Petitioner's claims not only lack merit, but contain no reasonably arguable bases for granting relief. Additionally, Petitioner acknowledges that no new claims can be raised in a habeas petition. As such, the Court finds that justice would not be best served by allowing Petitioner a second opportunity to re-brief his issues. Accordingly, Petitioner's motion to withdraw is denied.

Certificate of Appealability

Before Petitioner may appeal this Court's dispositive decision, a certificate of appealability must issue. *See* 28 U.S.C. § 2253(c)(1)(A); Fed. R. App. P. 22(b). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When a court rejects a habeas claim on the merits, the substantial showing threshold is met if Petitioner demonstrates that reasonable jurists would find the district court's assessment of the constitutional claim debatable or wrong. *See Slack v. McDaniel*, 529 U.S. 473,

13

484-85 (2000). "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying that standard, a district court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims. *Id.* at 336-37. Additionally, "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rules Governing § 2254 Cases, Rule 11(a), 28 U.S.C. foll.§ 2254.

The Court finds that Petitioner has not demonstrated a substantial showing of the denial of a constitutional right. Accordingly, a certificate of appealability is not warranted in this case. The Court further concludes that Petitioner should not be granted leave to proceed *in forma pauperis* on appeal, as any appeal would be frivolous. *See* Fed. R. App. P. 24(a).

Conclusion

Accordingly, IT IS HEREBY ORDERED that the petition for writ of habeas corpus [dkt. 1] is DENIED.

IT IS FURTHER ORDERED that Petitioner's Motion to Allow Petitioner to Withdraw Writ of Habeas Corpus [dkt. 14] is DENIED.

IT IS FURTHER ORDERED that a certificate of appealability is DENIED.

IT IS FURTHER ORDERED that permission to proceed *in forma pauperis* on appeal is DENIED.

IT IS SO ORDERED.

S/Lawrence P. Zatkoff

Hon. Lawrence P. Zatkoff<br>
United States District Judge

Dated: September 18, 2014

14